IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LINDA KERR,

       Plaintiff,

vs.                                                                        No. CIV 00-0502 JC/WWD (ACE)

FARMINGTON MUNICIPAL
SCHOOL DISTRICT, et al.,

       Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for consideration of Defendants' Motion for Summary Judgment, filed April 11, 2001 *(Doc. 67)* and Defendants' Motion for Continuance of Trial Setting, filed April 20, 2001 *(Doc. 78)*. The Court has reviewed the motions, the memoranda and exhibits submitted by the parties, and the relevant authorities. The Court finds that Defendants' Motion for Summary Judgment is well taken and will be granted. The Court further finds that Defendants' Motion for Continuance of Trial Setting is moot and will be denied.

**I.**  **Background**

The position of Athletic Director for Farmington High School ("AD position") became vacant in the Spring of 1999. Before attempting to fill the vacancy, Superintendent Tom Sullivan decided to make the AD position half-time because the number of students attending Farmington High School had declined with the opening of a new school. The half-time AD position was advertised on June 14, June 21, and July 1, 1999. *See* Exhibit C, attached to Defendants' Memorandum in Support of Motion for Summary Judgment ("Dfs.' Memo.").

Plaintiff Linda Kerr claims that she was interested in applying for the AD position, but she

decided not to submit an application when she discovered the position was for part-time employment. *See* Complaint at 4, filed April 7, 2000 *(Doc. 1)*. Plaintiff maintains that she informed her supervisor, Jan Weems, that she was interested in applying for the position only if it was full-time. *See id.*

Defendants then claim that they decided to change the AD position to full-time employment when an assistant principal position became vacant. Defendants intended to combine the duties of the AD position and assistant principal ("assistant principal/AD position"). The minimum qualifications advertised for the position were a master's degree, possession or eligibility for an administrative license, and strong instructional leadership and interpersonal skills. *See* Exhibit D, attached to Dfs.' Memo. A series of advertisements for the new full-time position ran in the *Farmington Daily Times*, were posted at locations throughout the School District, and published on the internet. No applications were received.

Due to the lack of interest, Superintendent Sullivan inquired of those in attendance at a state-wide school administrator's conference whether they knew of any individuals who might be likely candidates for the vacancy. The Superintendent from Grady, New Mexico, suggested one of his employees, Curt Cook. After interviewing for the position, Mr. Cook was offered the assistant principal/AD position on July 30, 1999.

On August 5, 1999, Plaintiff learned that the assistant principal/AD position had been converted to full-time employment. Plaintiff called Larry DeWees, Principal of Farmington High School, to see if the position was still open. Principal DeWees informed Plaintiff that the position already had been offered to an applicant.

Two days after Plaintiff's conversation with Principal DeWees, Mr. Cook declined the

employment offer.  Consequently, Principal DeWees asked Jann Weems, the Chair of the Social Studies Department, if she could think of anyone who might be interested in the position.  Ms. Weems suggested Dave Willden, a teacher and coach who previously worked with her at Farmington High School.  Ms. Weems contacted Mr. Willden and encouraged him to apply for the opening.

Subsequently, Plaintiff learned from a co-worker on August 11, 1999, that the assistant principal/AD position had not been filled.  The following day the school year began, and Defendants maintain that Mr. Willden contacted Principal DeWees and told him that he was interested in the job.  *See* Dfs.' Memo. at 8.  After conducting an interview, Defendants appointed Mr. Willden to the assistant principal/AD position according to an alleged emergency hiring procedure.  The emergency hiring procedure was contained in a document called the "Kurley Memorandum;" however, it was not formally adopted by the School Board.  Nevertheless, Defendants claim that it followed the emergency procedures outlined in the Kurley Memorandum because it was adopted as an administrative directive under the delegated authority of the Superintendent as specified in Board policy.  Mr. Willden began his new duties on August 13, 1999, and the School Board approved his appointment at its August 26, 1999 meeting.

Relying on internal grievance procedures, Plaintiff unsuccessfully challenged the selection of Mr. Willden based on Defendants' failure to provide sufficient notice of the vacancy as required by Farmington Municipal School District policies and procedures.  *See* Complaint at 6-7.  Plaintiff further claimed that Mr. Willden did not meet the requisite qualifications for the employment vacancy.  *See id.*  Plaintiff's grievances were denied by the Defendants.

Plaintiff brings this action claiming that Defendants violated Title VII of the Civil Rights

3

Act of 1964, 42 U.S.C. § 2000e et seq. (Counts I and II), violated her equal protection rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 (Count V), and breached both a contract and the implied covenant of good faith and fair dealing (Counts VI and VII).  Defendants now move for summary judgment on all of the above Counts.

## II.  Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  When applying this standard, a court reviews the evidence and draws inferences in the light most favorable to the nonmoving party.  *See Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir.1998).

## III.  Analysis

### A.  Disparate Treatment

Proceeding under a disparate treatment theory, Plaintiff claims that Defendants intentionally discriminated against her based on race and sex when they failed to promote her to the assistant principal/AD position.  *See* Counts I, II, and V.  Plaintiff brings her race and sex discrimination claims pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983.  Disparate treatment claims under both Title VII and § 1983 are subject to the same methods of proof.  *See Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991).

Plaintiff may prove disparate treatment through either direct or indirect evidence of discrimination.  *See Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir.1999); *see also Elmore v. Capstan, Inc.*, 58 F.3d 525, 529 (10th Cir.1995).  Plaintiff offers no direct evidence of

4

race or sex discrimination.  The Court must therefore determine if there is sufficient indirect evidence for Plaintiff to survive summary judgment.

The Supreme Court set forth the framework for analyzing circumstantial evidence of discrimination in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  A plaintiff bears the initial burden of establishing a prima facie case.  *See id.* at 802.  A prima facie case of discriminatory failure to promote consists of:  (1) there was a promotional opportunity available; (2) the plaintiff was qualified and had established availability for the position; (3) despite the plaintiff's qualifications, she was not promoted to the position; and (4) the promotional opportunity was filled.  *See Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1362 (10th Cir.1997).  Once the plaintiff has established a prima facie case, the burden then "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason" for taking an adverse employment action against the plaintiff.  *See McDonnell Douglas Corp.*, 411 U.S. at 802.  The burden then shifts back to the plaintiff to put forth sufficient evidence to allow a jury to find that defendant's reason is pretextual or unworthy of belief.  *See id.* at 804.

Here, Defendants maintain that they are entitled to summary judgment because Plaintiff has failed to establish pretext.  *See* Dfs.' Memo. at 14.  Defendants argue that they were in a desperate situation because Mr. Cook's decision not to accept the initial employment offer came about a week before the school year was set to begin.  *See id.* at 17.  Defendants further argue that an assistant principal/AD was immediately needed to coordinate a number of student activities.  *See id.*  Thus, Defendants claim that Mr. Willden was immediately hired under the emergency hiring procedures because he was the first individual to present himself for consideration once the position was re-opened.  *See id.*

In response, Plaintiff contends that she has presented evidence of pretext.  *See* Plaintiff's Response to Defendants' Motion for Summary Judgment ("Pl.'s Response") at 4, filed May 8, 2001 *(Doc. 87)*.  First, Plaintiff argues that since she had previously expressed an interest in the position, Defendants should have considered her for the vacancy once the position was re-opened.  *See id.* at 8.  Second, Plaintiff argues that Defendants improperly relied on the emergency hiring procedures in hiring Mr. Willden.  *See id.* at 11.  Finally, Plaintiff argues that statistical data shows that Defendants' hiring practices are discriminatory.  *See id.* at 10.

### 1. Plaintiff's Previous Interest in the Vacancy

Although Plaintiff had previously informed Defendants of her interest in the vacancy, such evidence is insufficient to establish pretext.  When an employer does not post openings or take applications for promotion, but uses an informal promotion system, the employer has a "duty to consider all those who might reasonably be interested, as well as those who have learned of the job opening and expressed an interest."  *Jones v. Firestone Tire and Rubber Co., Inc.*, 977 F.2d 527, 533 (11th Cir. 1992) (internal citations omitted).  Viewing the evidence in a light most favorable to the Plaintiff, Defendants' use of the emergency hiring procedures might be considered an informal promotion system, thereby imposing a duty upon Defendants to consider Plaintiff for the vacancy.  However, an employer's duty to consider all those who might reasonably be interested in the vacancy only helps a plaintiff establish a prima facie case of discrimination.  *See id.*  In other words, such evidence creates a presumption of discrimination and forces the employer to articulate legitimate reasons for the plaintiff's rejection.  *See id.*

For purposes of this case, Plaintiff's previous conversation with Principal DeWees and Jann Weems helped her establish the prima facie case or presumption of discrimination.  However,

this evidence does not explain why Defendants' urgent need to hire an assistant principal/AD is a pretext for intentional discrimination.  Thus, Plaintiff still needs to present evidence to show that Defendants' proffered reasons for not promoting her are pretextual.

### 2.	**Emergency Hiring Procedures**

Plaintiff also maintains that Defendants' use of the emergency hiring procedures is a pretext for intentional discrimination.  Since the Farmington School Board never adopted the emergency hiring procedures as a formal board policy, Plaintiff argues that Defendants' reliance upon them in hiring Mr. Willden was improper.  Plaintiff further argues that according to Section 4.9.1 of the Farmington Municipal School Board of Education Policy Guide, the time period which constitutes an emergency is between August 15 and the 40th day of school.  *See* Exhibit F, attached to Pl.'s Memo.  Since Mr. Cook declined the employment offer on August 7, 1999, Plaintiff contends that Defendants should have resorted to the normal hiring procedures for filling the vacancy.

Despite the procedural irregularities that Plaintiff alleges, the Court finds that Plaintiff has not carried her ultimate burden in demonstrating genuine issues of material fact concerning pretext.  When "'the alleged procedural irregularity disadvantaged all potential applicants for a promotion, rather than just members of a protected class, the fact that a company failed to follow its own procedures 'does not suggest either that the defendant's proffered reasons for its employment decisions were pretextual or that the defendant was motivated by illegal discrimination.'"  *Kendrick v. Penske Transportation Service, Inc.*, 220 F. 3d 1220, 1230 n.9 (10th Cir. 2000) (quoting *Randle v. City of Aurora*, 69 F.3d 441, 454 n.20 (10th Cir. 1995)).

In this case, the Court finds that the alleged procedural irregularities disadvantaged all potential applicants instead of members of a specific protected class. A number of individuals previously inquired about the assistant principal/AD position. *See* Affidavits of Rick Hoerner, Rich Wallace, and Frank Stimac. Similar to the Plaintiff, none of these individuals were contacted before the position was offered to Mr. Willden. Thus, Plaintiff has not shown that she was treated differently from other similarly situated individuals.

### 3. Statistical Evidence

Finally, Plaintiff attempts to show pretext by providing statistical evidence that the district's hiring practices are not reflective of the demographics in the area. *See* Pl.'s Memo. at 10. In a disparate treatment case, the focus is on how and why an employer treated a particular individual the way it did. *See Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1319 (10th Cir. 1999). Consequently, statistical evidence discussing an employer's general hiring patterns is considerably less probative. *See id.* Thus, overall employment statistics have little bearing on the specific intentions of an employer in making a particular hiring decision. *See id.* Here, the statistics cited by Plaintiff give little insight into Defendants' motive for not hiring Plaintiff. The fact that Defendants do not have any Native American administrators, standing alone, is insufficient to explain why such a situation has occurred. Moreover, Plaintiff offers no statistical data with respect to sex discrimination. Considering the limited insight of the statistical data and the lack of other probative evidence specifically rebutting Defendants' urgent need to fill the vacancy, the Court concludes that the statistics cited by the Plaintiff are insufficient to demonstrate a genuine fact issue in this case. Accordingly, Defendants' motion for summary judgment on Plaintiff's disparate treatment claims is granted.

### B.     Disparate Impact

Defendants maintain that Plaintiff has only alleged a disparate treatment theory under Title VII.  *See* Dfs.' Memo. at 12.  However, Plaintiff argues that the "Court can glean the essence of the [disparate impact] theory" from the complaint, pretrial order, and other documents in the record.  *See* Pl.'s Memo. at 3.

A plaintiff may establish a prima facie case of disparate impact discrimination by showing that a specific identifiable employment practice or policy caused a significant disparate impact on a protected group.  *See Ortega v. Safeway Stores, Inc.*, 943 F.2d 1230, 1242 (10th Cir.1991).  The Court finds that the only employment practice at issue is Defendants' use of the emergency hiring procedures.  Thus, Plaintiff must show that the emergency hiring procedures caused a significant disparate impact on a protected group.

Plaintiff attempts to support her disparate impact claim through statistics.  *See* Pl.'s Memo. at 14.  Statistics may be used to show an unfair impact resulting from the complained of practice.  *See Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 650 (1989).  However, the statistical evidence offered must be tied to the employment practice or policy at issue.  *See Bullington v. United Airlines*, 186 F.3d 1301, 1314 (10th Cir.1999).  In this case, the statistical evidence discusses the percentage of Native American teachers employed by the Farmington School District, the percentage of Native American administrators within the Farmington School District, and the percentage of Native American administrators in surrounding school districts.  The problem with this information is it fails to shed light on how the use of the emergency hiring procedure caused a significant disparate impact upon Native Americans.  In other words, Plaintiff's statistical data is a general assault on the racial composition of the workforce, and it

9

will not suffice to create an actionable disparate impact claim. "Just as an employer cannot escape liability under Title VII by demonstrating that, 'at the bottom line,' his work force is racially balanced, ... a Title VII plaintiff does not make out a case of disparate impact simply by showing that, 'at the bottom line,' there is racial imbalance in the work force." *Wards Cove Packing Co.*, 490 U.S. 642, 656-57. Since Plaintiff failed to offer evidence demonstrating the emergency hiring procedure had a disproportionate impact on Native Americans, summary judgment is granted.

### B. Contract Claims

Since pendent jurisdiction is a doctrine of discretion, a district court may decline to exercise jurisdiction over state law claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715 (1966). Because the Court concludes summary judgment is appropriate with respect to Plaintiff's Title VII and Equal Protection claims, no issue of federal law remains. Therefore, the Court declines to exercise pendent jurisdiction over Plaintiff's state law claims.

### C. Motion for Continuance of Trial Setting

Defendants move the Court for a continuance of the trial setting. For the reasons stated above, Defendant's motion is now moot. Accordingly, Defendants' motion is denied.

Wherefore,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment, filed April 11, 2001 *(Doc. 67)* is hereby **granted**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Continuance of Trial Setting, filed April 20, 2001 *(Doc. 78)* is hereby **denied**.

DATED May 18, 2001.

_____
UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

    Liane E. Kerr, Esq.
    Liane E. Kerr, LLC
    Albuquerque, New Mexico

    Peter V. Domenici, Jr., Esq.
    Dolan & Domenici, PC
    Albuquerque, New Mexico

Counsel for Defendants:

    John F. Kennedy, Esq.
    Alexia Constantaras, Esq.
    Cuddy, Kennedy, Hetherington, Albetta & Ives, LLP
    Santa Fe, New Mexico